**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **DAVID MCALPINE,**<br>**Plaintiff,** | §<br>§ | |
| | § | |
| **V.** | § | |
| | § | |
| **THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY AND DAVID THORPE,**<br>**Defendants.** | §<br>§<br>§<br>§ | **C.A. NO. 4:15-cv-00954** |

**APPENDIX IN SUPPORT OF PLAINTIFF DR. DAVID MCALPINES' RESPONSE TO DEFENDANTS MOTION FOR SUMMARY JUDGMENT**

Plaintiff Dr. David McAlpine files this Appendix in Support of its Response to Defendants' Motion for Summary Judgment and Brief in Support, which contains the following exhibits:

| **EXHIBIT** | **DESCRIPTION** | **APP. PAGES** |
|---|---|---|
| **A** | Affidavit of Dr. David McAlpine in Support of Response to Defendants' Motion for Summary Judgment | 1-6 |
| | Exhibit #1<br>NWM Policy # D-712-825 | 7-32 |
| | Exhibit #2<br>Letter from Jon Magalska 02/01/1990 re: Definition of "Total Disability" under the Policy | 33-34 |
| **B** | Affidavit of Dan Axthelm in Support of Response to Defendants' Motion for Summary Judgment | 35-36 |
| **C** | Excerpts from the deposition of Pamela Mazzula | |

Respectfully submitted,

By: /s/Phillip Baldwin, Jr.
Phillip Baldwin, Jr.
State Bar No. 01629200
pbbjr@msn.com
PHILLIP BALDWIN, JR.
ATTORNEY AT LAW
4412 Rosewood
Marshall, TX 75672
Mailing Address
PO Box 1948
Marshall, TX 75671
Tel: 903.926.1095
Fax: 210.568.6959

and

Jonathan Winocour
State Bar No. 24037730
jwinocourt@winocourlaw.com
WINOCOUR LAW
9400 N. Central Expressway, Suite 1204
Dallas, TX 75231
Tel: 214.575.6060
Fax: 214.575.6220
ATTORNEYS FOR PLAINTIFF
DAVID MCALPINE

**CERTIFICATE OF SERVICE**

I hereby certify that on August 16, 2017, a true and correct copy of the above and foregoing document has been served via email to:

/s/ Phillip Baldwin Jr
Phillip Baldwin Jr

Opposing Counsel:

Bill E. Davidoff
State Bar No. 00790565
bill.davidoff@figdav.com

Amber D. Reece
State Bar No. 24079892
amber.reece@figdav.com

Kim Helms
kim.Helms@figdav.com

Amy Gatlin
amy.gatlin@figdav.com

FIGARI + DAVENPORT, LLP
901 Main Street, Suite 3400
Dallas, TX 75202
TEL: 214.939.2000
FAX: 214.939.2090
ATTORNEYS FOR DEFENDANTS
THE NORTHWESTERN MUTUAL LIFE
INSURANCE COMPANY AND DAVID
THORPE

Exhibit "A"

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **DAVID MCALPINE,**<br>**Plaintiff,** | §<br>§ | |
| | § | |
| **V.** | § | |
| | § | |
| **THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY AND DAVID THORPE,**<br>**Defendants.** | §<br>§<br>§<br>§ | **C.A. NO. 4:15-cv-00954** |

**AFFIDAVIT OF DR. DAVID MCALPINE IN SUPPORT OF PLAINTIFFS' RESPONSE TO DEFENDANTS MOTION FOR SUMMARY JUDGMENT**

STATE OF TEXAS §
§
COUNTY OF TARRANT §

I, David McAlpine declare as follows:

1. My name is David McAlpine. I am the Plaintiff in the above entitled cause, as such, I have personal knowledge of the statements set forth in this Affidavit, and they are true and correct.

2. I have read and reviewed the assertions set forth in Plaintiffs' Response and Brief in Response to Defendants Motion for Summary Judgment, and hereby state the they are true and correct.

3. Attached hereto as Exhibit #1 is a true and correct replica of Northwestern Mutual's Disability Income Policy No. D 712 825, which was issued to me on November 10, 1989. The terms of this policy are identical to my other NWM Policy # D 776 743 which was issued on October 10, 1990.

4. At the time I purchased these policies my practice in obstetrics was thriving and was my primary source of income, most of my gynecology patients were with me because they started as obstetrics patients. However my obstetrics practice was exhausting and required me to work long hours. As is typically the case with delivering babies I frequently found myself at the hospital in the middle of the night.

5. At this time I also had 4 children to provide for and I was concerned about providing for their welfare in the event I one day became unable keep up this grind.

6. At the urging of A. J Hillin, who sold disability policies for Northwest Mutual (NWM) I decided to purchase a disability policy to provide protection in the event I became unable to continue my Obstetrics focused practice. I was told by Mr. Hillin that these were "Cadillac" Policies intended to protect me and my family in case I became unable to continue my chosen occupation primarily focused on Obstetrics.

7. After purchasing the first policy, but, prior to purchasing the second policy I inquired about the terms of these policies and specifically the definition of "Total Disability", and how it would be determined in the event it occurred.

8. In response to my inquiry I received a letter from Jon Mahaska an Actuary for NWM, a copy of this letter is attached hereto as Exhibit #2.

9. In his letter Mr. Magalska explained:

> "Total Disability" is defined in terms of your ability to perform your occupation. During the Initial Period, you would be considered totally disabled if you cannot perform the principal duties of the occupation in which you are engaged at the time you become disabled. After the Initial Period, you would be considered totally disabled if you were unable to perform the principal duties of your occupation and were not gainfully employed in any other occupation."

10. He further explained:

"If you are engaged exclusively in a professional specialty, NML will consider that specialty to be your occupation. By "professional specialty" we mean such occupations as obstetr1cs, gynecology, and trial law. We do not mean employment by a particular employer. In other words, it is your specific work which is covered, not your posit1on or title.

We recognize that your duties are subject to change from time to time, and, as stated in the contract, the words "his occupation" mean the occupation of the insured at the time he becomes disabled. If the insured is regularly engaged in more than one occupation, all of the occupations of the insured at the time he becomes disabled will be combined together to be "his occupation."

Please be assured that when we make claim decisions, we look at the specific occupational duties of each insured. In all respects our goal is to administer claims fa1rly and to recognize that each insured's situation calls for special consideration."

11. The relevant portion of the Policies read:

**1.2 FULL BENEFIT FOR TOTAL DISABILITY**
The Full Benefit is payable for each month of total disability between the Beginning Date and the end of the Maximum Benefit Period.

**Total Disability.**
Until the end of the Initial Period, the Insured is totally disabled when he is unable to perform the principal duties of his occupation. After the Initial Period, the Insured is totally disabled when he is unable to perform the principal duties of his occupation and is not gainfully employed in any occupation.

12. I have always considered the "Principal" Duty of my Occupation to be Obstetrics as that was what I spent most of my time on and from which most of income derived. In addition, the vast majority of my Gynecological Patients originally came to me as Obstetrics Patients and stayed with me as they moved beyond childbearing years. In my career I have delivered over 10,000 babies, probably more like 12,000 to 15,000,averaging 30-40 per month for 20-25 years.

13. After reading the Policy, and with the further assurance of Mr. Magalska's letter and Mr. Hillin's insistence I would be protected, I was reassured that these Policies were a wise investment to protect my families future in the event I became unable to continue in my chosen specialty. So I purchased the second Policy and continued to pay the premiums on both for the

next 23 years. Those assurances were the primary reason I purchased the Policies and continued to pay my premiums.

14. I was never told, and never imagined that if one day I became unable to practice my specialty because of health conditions, the determination of the degree of my disability and the benefits I received would be determined by a "Policy" administrator with no medical training.

15. Then in 2013 I was stricken with a chronic degenerative arthritic condition in my hands that was progressive with no known cure, as diagnosed by Dr. Dan Axthelm, a specialist in this area. A copy of the Affidavit of Dr. Dan Axthelm is attached hereto as Exhibit #3.

16. This condition progressed my hands and fingers weakened and the pain associated with using them increases dramatically. The extensive prolonged use of my hands and fingers required by Obstetrics typical procedures was where my condition had the greatest impact. Aside from the horrific pain, these procedures required extreme dexterity and strength, which I no longer possessed.

17. I soon began to realized that my days of delivering babies were numbered and stopped taking Obstetrics Patients.

18. This results were a dramatic decline in revenue over the ensuing months as I lost 40%-50% of my income.

19. This was compounded by the fact that as my Obstetrics Patients left me, and with no new Obstetrics Patients I had no source of Gynecology Patients.

I declare under penalty of perjury of that the foregoing is true and correct.

Further Affiant sayeth not.

David McAlpine

STATE OF TEXAS

COUNTY OF TARRANT

SUBSCRIBED AND SWORN TO BEFORE ME, this the 16th, day of August, 2017, by David McAlpine.

Notary Public in and for the State of Texas
Printed Name: Cynthia Camacho
Commission Expires: 7/11/21

CYNTHIA CAMACHO
Notary Public, State of Texas
Comm. Expires 07-11-2021
Notary ID 131203062

Exhibit “1”

Northwestern Mutual®

The Northwestern Mutual Life Insurance Company agrees to pay the benefits provided in this policy, subject to its terms and conditions. Signed at Milwaukee, Wisconsin on the Date of Issue.

This disability income policy is guaranteed renewable upon timely payment of premiums to the first policy anniversary after the Insured's 65th birthday and, during that period, can neither be cancelled nor have its terms or premiums changed by the Company.

Donald J Schuenke — ~~Chief Executive Officer~~ President & CEO

Peter W Bruce — Secretary

Complaint Notice: Should any dispute arise about your premiums or claim that you have filed, first contact the agent who sold you this policy or write to the company that issued the policy. If the problem is not resolved as provided in the policy, you may also write the State Board of Insurance Department C, 1110 San Jacinto Street, Austin, Texas 78786.

17-0809 Texas

**DISABILITY INCOME POLICY** REPLICA

**Eligible For Annual Dividends.**

Non-Cancellable and
Guaranteed Renewable to Age 65

Conditionally Renewable to Age 75

**Right To Return Policy --** Please read this policy carefully. The policy may be returned by the Owner for any reason within ten days after it was received. The policy may be returned to your agent or to the Home Office of the Company at 720 East Wisconsin Avenue, Milwaukee, WI 53202. If returned, the policy will be considered void from the beginning and any premium paid will be refunded.

MMD1

| | | | |
|---|---|---|---|
| INSURED | DAVID B MC ALPINE | AGE AND SEX | 39 MALE |
| POLICY DATE | NOVEMBER 10, 1989 | POLICY NUMBER | D 712 825 |

EXCLUSIONS--SEE SECTION 2.

**This policy is a legal contract between the Owner and The Northwestern Mutual Life Insurance Company.**
**Read your policy carefully.**

# GUIDE TO POLICY PROVISIONS

**BENEFITS AND PREMIUMS**

**SECTION 1. BENEFITS**

Description of general terms. Full Benefit payable for total disability. Proportionate Benefit payable for partial disability. How the Proportionate Benefit is determined. Transition Benefit. Lifetime benefit payable for Presumptive Disability. Waiver of Premium Benefit.

**SECTION 2. EXCLUSIONS**

**SECTION 3. CONDITIONAL RIGHT TO RENEW TO AGE 75**

**SECTION 4. CLAIMS**

How to notify the Company of a claim. Proof of disability. How the benefits will be paid. Physical examination may be required. Limits on when you may start a legal action.

**SECTION 5. OWNERSHIP**

Rights of the Owner. Assignment as collateral.

**SECTION 6. PREMIUMS AND REINSTATEMENT**

Payment of premiums. Grace Period of 31 days to pay premiums.
Refund of unused premium at death. How to reinstate the policy.

**SECTION 7. THE CONTRACT**

Changes. Incontestability. Misstatement of age. Dividends. Definition of dates.

**ADDITIONAL BENEFITS** (if any)

**APPLICATION**

MMD1

BENEFITS AND PREMIUMS

DATE OF ISSUE - NOVEMBER 10, 1990

| PLAN AND ADDITIONAL BENEFITS | FULL BENEFIT PER MONTH | ANNUAL PREMIUM | PAYABLE FOR |
|---|---|---|---|
| DISABILITY INCOME | $ 12,000 | $ 5,604.00 | 26 YEARS |
| ADDITIONAL PURCHASE BENEFIT AMOUNT EACH PURCHASE DATE | 1,000 | 64.00 | 11 YEARS |
| INDEXED INCOME BENEFIT | | 1,956.00 | 26 YEARS |

RENEWAL OF COVERAGE BEYOND AGE 65 MAY REQUIRE AN INCREASE IN THE PREMIUM. SEE SECTION 3.

A PREMIUM IS PAYABLE NOVEMBER 10, 1989 AND EVERY NOVEMBER 10 AFTER THAT.

THE FIRST PREMIUM IS $7,624.00.

THE PREMIUM FOR THIS POLICY IS ON A NONSMOKER BASIS.

| | |
|---|---|
| BEGINNING DATE | 91ST DAY OF DISABILITY IN THE FIRST 180 DAYS AFTER THE START OF DISABILITY. |
| MAXIMUM BENEFIT PERIOD | TO NOVEMBER 10, 2015, BUT NOT LESS THAN 24 MONTHS OF BENEFITS, WITH LIFETIME FOR TOTAL DISABILITY AS PROVIDED IN SECTION 1.7. |
| INITIAL PERIOD | TO NOVEMBER 10, 2015, BUT NOT LESS THAN 24 MONTHS OF BENEFITS. |

OWNER DAVID B MC ALPINE, THE INSURED

| | | | |
|---|---|---|---|
| INSURED | DAVID B MC ALPINE | AGE AND SEX | 39 MALE |
| POLICY DATE | NOVEMBER 10, 1989 | POLICY NUMBER | D 712 825 |

EXCLUSIONS--SEE SECTION 2.

# SECTION 1. BENEFITS

## 1.1 GENERAL TERMS

This policy provides benefits when the Insured is totally or partially disabled. Section 1 describes the benefits of the policy and tells when they are payable. It also gives the meaning of several important terms that are used in the policy.

**Insured and Owner.** The Insured and Owner are named on page 3. The male pronouns used in this policy for the Insured and Owner apply to both males and females.

**Disabilities Covered by the Policy.** Benefits are provided for the Insured's total or partial disability only if:

- the Insured becomes disabled while this policy is in force;
- the Insured is under the care of a licensed physician other than himself during the time he is disabled;
- the disability results from an accident or sickness; and
- the disablity is not excluded under Section 2.

A disability caused by pregnancy or childbirth will be covered.

**Benefit Terms.** The schedule of Benefits and Premiums (page 3) has a number of important terms that are used in this policy. These terms are:

**Full Benefit.** This is the maximum amount of monthly income payable under the policy.

**Beginning Date.** This is the date on which benefits begin to accrue after the Insured becomes disabled. Benefits are not payable for the time the Insured is disabled before the Beginning Date.

**Maximum Benefit Period.** This is the longest period of time that benefits are payable for disability. In determining the maximum length of time for which benefits are payable, periods of total and partial disability are added together. If page 3 provides that the Maximum Benefit Period has a lifetime benefit for total disability, then see Section 1.7.

**Initial Period.** This is a period of time that starts on the Beginning Date and continues, while the Insured is disabled, for the length of time shown on page 3. The definition of total disability changes after the Initial Period.

**Occupation.** The words "his occupation" mean the occupation of the Insured at the time he becomes disabled. If the Insured is regularly engaged in more than one occupation, all of the occupations of the Insured at the time he becomes disabled will be combined together to be "his occupation".

## 1.2 FULL BENEFIT FOR TOTAL DISABILITY

The Full Benefit is payable for each month of total disability between the Beginning Date and the end of the Maximum Benefit Period.

**Total Disability.** Until the end of the Initial Period, the Insured is totally disabled when he is unable to perform the principal duties of his occupation. After the Initial Period, the Insured is totally disabled when he is unable to perform the principal duties of his occupation and is not gainfully employed in any occupation.

**Benefit Amount for Partial Month.** When a total disability lasts for a part of a month, 1/30th of the Full Benefit will be payable for each day of total disability.

## 1.3 PROPORTIONATE BENEFIT FOR PARTIAL DISABILITY

The Proportionate Benefit is payable for each month of partial disability between the Beginning Date and the end of the Maximum Benefit Period.

**Partial Disability.** The Insured is partially disabled when:

a. he is unable:
   - to perform one or more of the principal duties of his occupation; or
   - to spend as much time at his occupation as he did before the disability started;

   and

b. he has at least a 20% Loss of Earned Income.

Until the Proportionate Benefit has been payable for six months, the Insured need not have a 20% Loss of Earned Income to be partially disabled if:

- he is unable to perform one or more principal duties which accounted for at least 20% of the time he spent at his occupation before the disability started; or
- he has at least a 20% loss of time spent at his occupation.

If the Insured qualifies for both the Full and Proportionate Benefit, the Full Benefit only will be paid.

**Benefit Amount for Partial Month.** When a partial disability lasts for a part of a month, 1/30th of the Proportionate Benefit will be payable for each day of partial disability.

### 1.4 HOW THE PROPORTIONATE BENEFIT IS DETERMINED

The Proportionate Benefit is intended to compensate for a loss of earned income caused by the Insured's disability. The amount of each monthly benefit is the Full Benefit multiplied by the Insured's Loss of Earned Income and divided by his Base Earned Income. Thus, the Proportionate Benefit amount equals:

$$\text{Full Benefit} \times \frac{\text{Loss of Earned Income}}{\text{Base Earned Income}}$$

However, if the Insured has at least an 80% Loss of Earned Income, the Proportionate Benefit amount will be 100% of the Full Benefit. In no event will the amount payable be more than 100% of the Full Benefit.

**Choice of Benefit Amount for First Six Months.** For each of the first six months in which a Proportionate Benefit is payable, the Owner may choose:

- to receive 50% of the Full Benefit; or
- to receive a Benefit based on the Insured's Loss of Earned Income.

The Owner may alternate between these two choices as to each of the six months. However, the Owner may not change his choice after the Benefit is paid for that month.

The Choice of Benefit Amount does not apply to a Transition Benefit payable under Section 1.5.

**Loss of Earned Income.** This is:

- the Insured's Base Earned Income; less
- his Earned Income for the month for which the Benefit is claimed.

Earned Income is credited to the period in which it is earned, not the period in which income is actually received.

**Earned Income.** Earned Income is:

- the sum of salary, wages, commissions, fees, bonuses, and other compensation or income earned by the Insured from all sources for work performed by him; less
- normal and customary business expenses.

It is determined before the deduction of federal, state and local income taxes.

**Base Earned Income.** During the first 12 months of a disability, Base Earned Income is the average monthly Earned Income of the Insured for:

- a 12 consecutive month period during the 24 month period before the start of disability; or
- any two of the five calendar years before the start of disability.

The period which generates the highest average (and therefore the highest benefit amount) will be used.

After the first 12 months of a disability, Base Earned Income is the average monthly Earned Income of the Insured multiplied by an Indexing Factor. The Indexing Factor is:

- the consumer price index for the current year of disability; divided by
- the consumer price index for the year the disability started.

Thus, after 12 months of a disability, Base Earned Income equals:

$$\text{average monthly Earned Income} \times \frac{\text{consumer price index for the current year of disability}}{\text{consumer price index for the year disability started}}$$

In the event the Indexing Factor is less than one, a value of one will be used.

**Consumer Price Index.** The "consumer price index for the year the disability started" is the <u>Consumer Price Index for All Urban Consumers, United States City Average, All Items</u> ("CPI-U") for the fourth month before the start of disability. The "consumer price index for the current year of disability" is the CPI-U for the fourth month before the most recent anniversary of the start of disability.

The CPI-U is published by the Bureau of Labor Statistics. If the method for determining the CPI-U is changed, or if it is no longer published, it will be replaced by some other index found by the Company to serve the same purpose.

**Proof of Earned Income.** The Company may require proof, including income tax returns, of the amount of Earned Income for periods before and after the start of the disability.

### 1.5 TRANSITION BENEFIT

The Company will pay a Proportionate Benefit for up to the first 12 months after the Insured's recovery from a disability, provided:

- the Insured was disabled until the Beginning Date;
- the Insured has returned to full-time employment;
- the Insured has at least a 20% Loss of Earned Income for the month for which the benefit is claimed; and
- the month for which the benefit is claimed is within the Maximum Benefit Period.

The amount of this Benefit will be determined under Section 1.4.

This Benefit is payable for up to 12 months for each separate disability. For any month this Benefit is payable, premiums will be waived.

### 1.6 TRANSPLANT DONOR

If the Insured donates an organ for transplant to another person, a disability caused by the donation will be considered as caused by sickness.

### 1.7 LIFETIME BENEFIT FOR TOTAL DISABILITY

If page 3 provides that the Maximum Benefit Period has a lifetime benefit for total disability, then the Full Benefit is payable as long as total disability continues during the lifetime of the Insured, provided:

- the Insured is totally disabled on the policy anniversary that follows his 60th birthday; and
- the total disability continues beyond the policy anniversary that follows his 65th birthday.

### 1.8 LIFETIME BENEFIT FOR PRESUMPTIVE TOTAL DISABILITY

Even if the Insured is able to work, he will be considered totally disabled if he incurs the total and irrecoverable loss of:

- sight in both eyes;
- use of both hands;
- use of both feet;
- use of one hand and one foot;
- speech; or
- hearing in both ears.

The Full Benefit is payable for this loss provided: the loss occurs while this policy is in force; the loss occurs before the first policy anniversary that follows the 65th birthday of the Insured; the loss results from an accident or sickness; and the loss is not excluded under Section 2. The Insured does not need to be under the care of a physician.

The Full Benefit for the loss:

- is payable monthly;
- starts with the date of loss, not the Beginning Date;
- is payable for as long as the loss continues during the lifetime of the Insured; and
- is in lieu of other benefits payable for total or partial disability.

### 1.9 WAIVER OF PREMIUM BENEFIT

The Company will waive premiums which become due on this policy while the Insured is totally or partially disabled if:

- the disability lasts for at least 90 days; or
- the disability lasts beyond the Beginning Date, if sooner.

The Waiver of Premium Benefit is not limited by the Maximum Benefit Period.

If premiums are waived, the Company will also refund that portion of a premium paid which applies to a period of disability beyond the policy month in which the disability began. If a premium is to be waived on a policy anniversary, an annual premium will be waived.

The Company will not waive the payment of premiums after the end of the disability (except where the waiver continues under Section 1.5). The Owner may then keep the policy in force by resuming the payment of premiums as they become due.

### 1.10 REHABILITATION BENEFIT

At the Insured's request, the Company will consider joining in a program to rehabilitate the Insured. The Company's role in the program will be determined by written agreement with the Insured. Benefits will continue during the program under the terms of the agreement.

### 1.11 DISABILITY WITH MULTIPLE CAUSES

If the Insured is disabled from more than one cause, the amount and duration of benefits will not be more than that for any one of the causes.

### 1.12 BENEFITS FOR SEPARATE DISABILITIES

Each separate time the Insured is disabled, a new Initial Period, Beginning Date and Maximum Benefit Period start. A disability is separate, and not a continuation of one that started earlier, if:

- the cause of the later disability is not medically related to the cause of the earlier one, and the Insured had resumed on a full-time basis the principal duties of an occupation for at least 30 consecutive days; or
- the cause of the later disability is related to the cause of the earlier one, and the later disability starts at least 6 months after the end of the earlier one.

## SECTION 2. EXCLUSIONS

### 2.1 PRE-EXISTING CONDITIONS

There will be no benefits for a disability or loss that:

- starts within two years after the Date of Issue; and
- results from an accident that occurred or from a sickness that appeared within two years before the Date of Issue and was not disclosed in the application.

A sickness is considered to have appeared if it would have caused a prudent person to seek medical attention.

### 2.2 OTHER EXCLUSIONS

There will be no benefits for a disability or loss that:

- is caused or contributed to by an act or incident of war, declared or undeclared; or
- is excluded from coverage by an Agreement for Limitation of Coverage.



CONFIDENTIAL NM-02573

# SECTION 3. CONDITIONAL RIGHT TO RENEW TO AGE 75

On each policy anniversary between the Insured's 65th and 75th birthdays, the Owner may renew this policy for one year if the Insured is actively and gainfully employed on a full-time basis. To renew this policy, the Owner must send a written request to the Company each year. This right to renew ends on the first anniversary on which the Insured is not so employed or on which the Owner chooses not to renew the policy.

For a policy that is renewed:

- benefits are payable only for total disability; and
- the premium for each year of renewal will be based on the Insured's age and the Company's rates in use at the time of renewal.

# SECTION 4. CLAIMS

### 4.1 NOTICE OF CLAIM

Written notice of claim must be given to the Company within 60 days after the start of any loss covered by this policy. If the notice cannot be given within 60 days, it must be given as soon as reasonably possible. The notice should:

- give the Insured's name and policy number; and
- be sent to the Home Office or be given to an authorized agent of the Company. The Home Office is located at:

720 East Wisconsin Avenue
Milwaukee, Wisconsin 53202.

### 4.2 CLAIM FORMS

The Company will furnish claim forms within 15 days after receiving notice of claim. If claim forms are not furnished within that period, written proof of disability may be made without the use of the Company's forms.

### 4.3 PROOF OF DISABILITY

Written proof of disability must be given to the Company within 90 days after the end of each monthly period for which benefits are claimed. If the proof is not given within the 90 days, the claim will not be affected if the proof is given as soon as reasonably possible.

### 4.4 TIME OF PAYMENT OF CLAIMS

Benefits due under this policy will be paid monthly.

### 4.5 PAYMENT OF CLAIMS

Benefits will be paid to the Owner or to his estate.

### 4.6 MEDICAL EXAMINATION

The Company, at its own expense, may have the Insured examined as often as reasonably necessary in connection with a claim. This will be done by a physician of the Company's choice.

### 4.7 LEGAL ACTIONS

No legal action may be brought for benefits under this policy within 60 days after written proof of disability has been given. No legal action may be brought after three years (or a longer period that is required by law) from the time written proof is required to be given.

# SECTION 5. OWNERSHIP

### 5.1 POLICY RIGHTS

All policy rights may be exercised by the Owner, or his successor or transferee.

### 5.2 TRANSFER OF OWNERSHIP

The Owner may transfer the ownership of this policy. Written proof of transfer satisfactory to the Company must be received at its Home Office. The transfer will take effect as of the date it was signed. The Company may require that the policy be sent to its Home Office for endorsement to show the transfer.

# SECTION 6. PREMIUMS AND REINSTATEMENT

## 6.1 PREMIUMS

**Payment.** All premiums after the first are payable at the Home Office or to an authorized agent. A premium must be paid on or before its due date. A receipt signed by an officer of the Company will be furnished on request.

**Frequency.** Premiums may be paid annually, semi-annually or quarterly at the published rates of the Company. A change in premium frequency will take effect on the Company's acceptance of the premium for the new frequency. Premiums may be paid on any other frequency approved by the Company.

**Grace Period.** A grace period of 31 days will be allowed for payment of a premium that is not paid on its due date. This policy will be in full force during this period.

The policy will terminate at the end of the grace period if the premium is not paid.

**Premium Refund at Death.** The Company will refund that portion of any premium paid for a period beyond the date of the Insured's death.

## 6.2 REINSTATEMENT

**Within Late Payment Period.** The late payment period is the first 31 days after the grace period. Within the late payment period, the policy will be reinstated as of the date the overdue premium is paid. No evidence of insurability will be required.

**After the Late Payment Period.** After the late payment period, the cost to reinstate must be paid to the Company. The Company may also require an application for reinstatement and evidence of insurability. The policy will be reinstated as of the date the cost to reinstate was paid to the Company if:

- the application is approved by the Company; or
- notice that the application has been disapproved is not given within 45 days from the date the Company receives the application.

The policy will be reinstated as of the date the Company accepts payment of the cost to reinstate if the Company does not require an application.

**Coverage.** If no evidence of insurability is required, the reinstated policy will cover only a disability that starts after the date of reinstatement. If evidence of insurability is required:

- the reinstated policy will cover only a disability that results from an accident that occurs, or from a sickness that first appears, after the date of reinstatement; and
- the Company may attach new provisions and limitations to the policy at the time of reinstatement. All other rights of the Owner and the Company will remain the same.

**Duty with Armed Forces.** If the policy terminates while the Insured is on active duty with the armed forces of any nation or group of nations, the policy may be reinstated without evidence of insurability. The policy will be reinstated as of the date a written request and the pro-rata premium for coverage until the next premium due date are received by the Company. The request must be received:

- no later than 90 days after the Insured's release from active duty; and
- no later than 5 years after the due date of the unpaid premium.

# SECTION 7. THE CONTRACT

### 7.1 ENTIRE CONTRACT; CHANGES

This policy with the application and attached endorsements is the entire contract between the Owner and the Company. No change in this policy is valid unless approved by an officer of the Company. The Company may require that the policy be sent to it to be endorsed to show a change. No agent has authority to change the policy or to waive any of its provisions.

### 7.2 INCONTESTABILITY

In issuing this policy, the Company has relied on the application. The Company may rescind the policy or deny a claim due to a misstatement in the application. However, after this policy has been in force for two years from the Date of Issue, no misstatement in the application may be used to rescind the policy or to deny a claim for a disability or loss that starts after the two year period.

In addition, a claim may be denied on the basis that a disability or loss is caused by a Pre-Existing Condition (see Section 2.1). However, the Company may not reduce or deny a claim on that basis if the disability or loss:

- starts after two years from the Date of Issue; and
- is not excluded from coverage by an Agreement for Limitation of Coverage.

### 7.3 CHANGE OF PLAN

The Owner may change this policy to any plan of disability insurance agreed to by the Owner and the Company. The change will be subject to:

- payment of required costs; and
- compliance with other conditions required by the Company.

All premiums and dividends after the date of change will be the same as though the new plan had been in effect since the Policy Date.

### 7.4 MISSTATED AGE

If the age of the Insured has been misstated, the benefits will be those which the premiums paid would have purchased at the correct age.

### 7.5 CONFORMITY WITH STATE STATUTES

Any provisions of this policy which, on the Date of Issue, are in conflict with the statutes of the state in which the Owner resides on that Date are amended to conform to such statutes.

### 7.6 DIVIDENDS

This policy will share in the divisible surplus, if any, of the Company. Divisible surplus is determined annually. This policy's share will be credited as an annual dividend.

Dividends will be:

- used to reduce premiums; or
- paid to the Owner when premiums are being waived.

### 7.7 DATES

Provided the first premium is paid, this policy will take effect on the Date of Issue. Policy months, years and anniversaries are computed from the Policy Date. Both dates are shown on page 3 of this policy.

### 7.8 TERMINATION

If premiums are paid when due, this policy will not terminate until the first policy anniversary following the 65th birthday of the Insured or, if later, when the right to renew the policy ends (see Section 3). However, if the Insured is disabled on the date determined above, the termination will not take effect until benefits are no longer payable due to that disability.

# ADDITIONAL PURCHASE BENEFIT

## 1. THE BENEFIT

The Company will issue additional disability income insurance policies on the Insured, subject to the terms and conditions below. The Company will not refuse to issue these new policies due to changes in the Insured's health, activities, or occupation that occur after the Date of Issue of this policy. However, as explained in section 4 of this Benefit, the issuing of these new policies is subject to the Company's financial underwriting standards.

In this Benefit, the words "this policy" mean the policy to which this Benefit is attached.

The premium for this Benefit is shown on page 3.

## 2. PURCHASE DATES

The Owner may purchase a new policy as of each Purchase Date that occurs after the Policy Date. There is a Purchase Date on each policy anniversary that is nearest the Insured's 25th, 30th, 35th, 40th, 45th, and 50th birthdays. The right to purchase a new policy as of a Purchase Date:

- expires on the 30th day after that Date; and
- may be used at an earlier time as an advance purchase.

The Company must receive an application and the first premium for each new policy not more than 60 days before, nor more than 30 days after, a Purchase Date.

## 3. ADVANCE PURCHASE

A new policy may be purchased before a Purchase Date, on the occurrence of certain events, if:

- this policy has been in force for at least one year; and
- the purchase is made more than one year after the last purchase of a new policy under this Benefit.

An advance purchase of a new policy may be made within 90 days after these events:

- the Insured's marriage;
- the birth of the Insured's child;
- the completion by the Insured of the legal adoption of a child; or
- an increase in the Insured's annual earned income of at least 20% since the Company last issued a disability income policy on the Insured.

To make an advance purchase of a new policy, there must be a future Purchase Date that has not been used. A new policy purchased in advance is in lieu of the new policy that otherwise could be purchased as of the next unused Purchase Date.

The Company must receive an application and the first premium for the new policy not more than 90 days after the marriage, birth, adoption or increase in income. The application must include proof of the marriage, birth, adoption or increase in income.

## 4. TERMS OF NEW POLICY

The terms below will apply to each new policy purchased under this Benefit.

**In General.** Each new policy will be in the form and have the same terms as policies being issued by the Company at the time of purchase. The terms available for each new policy will be based on the classification of risk of this policy. Subject to the limitations contained in the following paragraphs, the Owner may choose for each new policy:

- the amount of Full Benefit;
- the Maximum Benefit Period;
- the Beginning Date; and
- additional benefits.

**Limitations on Amount and Type of Coverage.** A new policy or additional benefit will be issued under this Benefit only if the Insured meets the Company's financial underwriting standards that are in effect at the time of the application for the new policy or benefit. These standards include the Insured's earned and unearned income, his net worth, the amount and types of disability coverage that the Insured has or for which he may be eligible after a qualifying period of employment, and the Company's issue limits.

**Full Benefit.** For each new policy:

- the minimum Full Benefit per month that may be purchased will be $200; and
- the maximum Full Benefit per month that may be purchased will be the Additional Purchase Benefit amount shown on page 3. For purposes of this paragraph, the amount of the Full Benefit issued will be deemed to include the amount of any Annually Renewable Disability Income Benefit or any Social Security Substitute Benefit issued as part of the new policy. The Owner may request a Full Benefit of up to twice the Additional Purchase Benefit amount shown on page 3 if there is an unused Purchase Date remaining. The purchase of the excess amount will be considered as an advance purchase of a new policy.

**Maximum Benefit Period.** The Owner may choose any Maximum Benefit Period for which the Insured qualifies under the Company's financial underwriting standards in effect at the time the new policy is purchased.

**Beginning Date.** The Owner may choose any Beginning Date offered at the time the new policy is purchased, provided the Beginning Date is not earlier than that of this policy.



(over)

**Additional Benefits.** Other than the Additional Purchase Benefit, each new policy may be issued with additional benefits:

- which are then a part of this policy; and
- for which the Insured meets the Company's financial underwriting standards that are then in effect.

The amount of these additional benefits will be subject to the Company's issue rules then in effect.

**Limitations of Coverage.** Each new policy will include any Agreement for Limitation of Coverage that is a part of this policy.

**No Benefit for Existing Disability.** The new policy will cover a disability that starts after the new policy is issued if it is caused by an accident that occurs, or a sickness that first appears, after this policy was issued. The new policy will not cover a disability that exists at the time the new policy is issued.

**Premium.** The premium for each new policy is determined as of its date of issue by:

- the Company's premium rates then in effect;
- the plan and amount of insurance issued;
- the Insured's age at the time of issue of the new policy; and
- the classification of risk of this policy.

**Waiver of Premium.** If premiums are being waived for this policy at the time a new policy is purchased under this Benefit, premiums will also be waived for the new policy for as long as they continue to be waived for this policy.

**Effective Date.** Each new policy issued will take effect on the date the Company receives the application or the first premium, whichever is later.

**5. PREMIUM REFUND**

The Company will refund to the Owner all of the premiums paid for this Benefit if:

- the Owner applies for the refund within 90 days after the policy anniversary nearest the Insured's 50th birthday; and
- the Owner supplies proof that:
  (1) the Insured has never qualified for a new policy under the limitations stated in section 4 of this Benefit; and
  (2) the Insured has not purchased a disability income insurance policy from any company while this Benefit was in force.

**6. TERMINATION**

This Benefit will terminate on the earliest of the following dates:

- the date of termination of this policy;
- the policy anniversary that is nearest the Insured's 50th birthday;
- the date the final Purchase Date is used by advance purchase; or
- the date on which the Home Office receives the Owner's written request.

Peter W Bruce

Secretary
THE NORTHWESTERN MUTUAL LIFE
INSURANCE COMPANY

MMD 1,2 APB

# INDEXED INCOME BENEFIT

## 1. THE BENEFIT

After the first 12 months of a disability, the Company will provide an indexed benefit in place of the benefit that would be payable for that month under Section 1 of the policy. The indexed benefit will be based on changes in a consumer price index, subject to certain limits explained in section 2 of this Benefit.

The premiums for this Benefit are shown on page 3.

## 2. HOW THE INDEXED BENEFIT IS DETERMINED

Starting on the first anniversary of the start of disability and subject to the limits described in this section, the indexed benefit for each month will be the benefit that would be payable for that month under Section 1 of the policy, multiplied by the Indexing Factor. The Indexing Factor is:

- the consumer price index for the current year of disability; divided by
- the consumer price index for the year the disability started.

Thus, the indexed benefit equals:

$$\text{the benefit under Section 1 of the policy} \times \frac{\text{consumer price index for the current year of disability}}{\text{consumer price index for the year the disability started}}$$

**Protection Against Decreases Of Indexed Benefits.** The indexed benefit will not decrease as a result of a decrease in the consumer price index. In such a case, the Indexing Factor used for the prior year will be used for the current year.

**Limit On Monthly Benefit.** The largest indexed benefit for each month will be the benefit that would be payable for that month under Section 1 of the policy increased at a rate of 8% compounded annually for each full year of continuing disability.

**Consumer Price Index.** The "consumer price index for the year the disability started" is the Consumer Price Index for All Urban Consumers, United States City Average, All Items (CPI-U) for the fourth month before the start of disability. The "consumer price index for the current year of disability" is the CPI-U for the fourth month before the most recent anniversary of the start of disability.

The CPI-U is published by the Bureau of Labor Statistics. If the method for determining the CPI-U is changed, or if it is no longer published, it will be replaced by some other index found by the Company to serve the same purpose.

**Separate Disabilities.** The indexing of benefits starts anew each separate time the Insured is disabled under the terms of the policy, as though there had been no prior disability.

**Limit If Lifetime Benefit.** When benefits are payable due to a Lifetime Benefit, there will be a limit on increases as follows:

**Lifetime Benefit For Total Disability.** There will be no increases on or after the first policy anniversary following the Insured's 65th birthday.

**Lifetime Benefit For Presumptive Total Disability.** There will be no increases on or after the last day of the Maximum Benefit Period stated on page 3 (exclusive of any extension of the Maximum Benefit Period due to the Lifetime Benefit for Total Disability).

**Conditional Renewal Excluded.** This Benefit will not be in force if the policy is in force under the Conditional Right to Renew to Age 75.

## 3. SOCIAL SECURITY SUBSTITUTE (SSS) BENEFIT AND ANNUALLY RENEWABLE DISABILITY INCOME (ARDI) BENEFIT

This policy may have the SSS Benefit, the ARDI Benefit, or both. If so, "the benefit that would be payable for that month under Section 1 of the policy" is increased by the terms of the SSS Benefit, the ARDI Benefit, or both, as the case may be.

## 4. TERMINATION

This Benefit will terminate on the earliest of the following dates:

- the date the policy terminates;
- the date the Home Office receives the Owner's written request; or
- the first policy anniversary that follows the Insured's 65th birthday unless the Insured is disabled on that date. In that case, the date of termination will be the date benefits are no longer payable.

Peter W Bruce

Secretary
THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY

Northwestern Mutual Life
720 East Wisconsin Avenue
Milwaukee, Wisconsin 53202

# AMENDMENT OF APPLICATION

Policy No. D 712 825

Date November 10, 1989

Region/Division WR

G.A. No. 123

Insured David B Mc Alpine

Sol. Agent No. 54324

Supplementing and amending this application it is hereby requested and directed that Question 17D of your application be answered "less than $27,900 for prior calendar year and less than $40,000" for calendar year, said question reading as follows:

"Unearned Income: State the Insured's net personal unearned income. This includes capital gains, interest, dividends, tax exempt unearned income, income from other investments, net rental income, pensions, annuities and alimony."

TO: File
ATTACH TO APPLICATION
Progressive Appraisal
Lisa Avila

This amendment is to be attached to and made part of this application

Date Signed 2 / 12 / 90
Month Day Year

Signed DBMcAl
SIGNATURE OF APPLICANT IN FULL

JB:jd

17-0694 (Rev. 9-83)

dj #108

RETURN THIS SIGNED ORIGINAL TO THE GENERAL AGENCY FOR PROCESSING

D172208
**DISABILITY INSURANCE APPLICATION**

# THE NORTHWESTERN MUTUAL LIFE
INSURANCE COMPANY
MILWAUKEE, WISCONSIN

No. D712825

☐ Life & Disability Applications

**1. INSURED** (Print) David B McAlpine — First / Middle Initial / Last — ☒ Male ☐ Female

**2A. INSURED'S DATE OF BIRTH** 5 / 11 / 50 (Month / Day / Year) **2B. PLACE OF BIRTH** South Africa (If other than USA, give name of country)

**3. APPLICANT,** if other than Insured ____ First / Middle Initial / Last — Relationship to Insured ____

**4. RESIDENCE OF INSURED** 4801 Countryside Ct. East (Street & No. or RFD)
This address will be used for all of the Insured's policies. Forth Worth (City) Tarrant (County) TX (State) 76132 (Zip Code)

**5A. PREMIUM PAYER** Send premium and other notices regarding this policy
to: ☒ Insurance Service Account (ISA) Payer
or
to: ☐ Insured ☐ Owner ☐ Applicant
☐ Other ____ Full Name
at: ☐ Insured's address in 4 or ____ Street & No or RFD
____ City / State / Zip Code

**5B. PAYERS DAYTIME TELEPHONE NUMBER:** (817) 370-2440 (Area Code)

6. Has an application or informal inquiry ever been made to Northwestern Mutual Life for annuity, life or disability insurance on the life of the Insured? ☒ Yes ☐ No If yes, the last policy number is 11 082 442

**7. INSURED'S OCCUPATION**
A. What is the Insured's primary occupation? Medical Doctor – OBGYN
B. List any other occupations of the Insured: None
C. What are the Insured's duties and the percent of time spent at each duty for each occupation? Practice of Medicine
D. Employer's: Name: David B. McAlpine, M.D.
Address: ☐ Insured's address in 4 or 7100 Oakmont Blvd Suite 102 (Street & No or RFD)
Fort Worth (City) TX (State) 76132 (Zip Code)
E. How long has the Insured been employed by this employer? 8 years
If less than 5 years, state the Insured's prior occupation(s) and employer(s). ____
F. What is the Insured's state of employment? TX (Give name of state)
G. Is the Insured actively at work on a full-time basis without medical restrictions?
☒ Yes ☐ No If no, explain. ____
H. Does the Insured intend to change occupation(s) or employer(s) within the next six months?
☐ Yes ☒ No If yes, explain. ____

**8. Complete this question only if exercising an ADDITIONAL PURCHASE BENEFIT OPTION.**
A. List policy number(s) under which an option is being exercised: 1.____ 2.____ 3.____
B. This application is: REGULAR APB — ☐ Regular Purchase ☐ Advance Purchase (Complete item C below)
BUSINESS APB — ☐ Disability Overhead Expense ☐ Buyout ☐ Keyperson
C. If this is an Advance Purchase, the event is:
☐ Marriage — Name of: ☐ Spouse ☐ Child ____ First / Middle Initial / Last
☐ Birth of child — Date and place of marriage, birth, or final decree of adoption:
☐ Adoption of child ____ / ____ / ____ Month / Day / Year ____ City / State

☐ Increase in Annual Earned Income:
$____ Actual — Two calendar years ago
$____ Actual — One calendar year ago (Should agree with 17C)
$____ Estimate — Current calendar year (Should agree with 17C)

D. Is the amount applied for more than the additional purchase option amount available? ☐ Yes ☐ No
If yes, what is the excess amount to be underwritten? $____



CONFIDENTIAL NM-02581

**9. POLICY APPLIED FOR**

| | Monthly Benefit | Maximum Benefit Period | Beginning Date | Initial Period To Age 65 | Initial Period To Age 70 |
|---|---|---|---|---|---|
| **DISABILITY INCOME POLICY** | | | | | |
| [X] Level premium | $ 12,000 | Life | 91 | [X] | [ ] |
| [ ] Step rate premium | $ | | | [ ] | [ ] |
| [ ] Interim Term | $ | | | [ ] | [ ] |
| Term period ____ (1, 2, 3, 4, 5 yrs.) | | | | | |
| **SOCIAL SECURITY SUBSTITUTE POLICY** | | | | | |
| [ ] Level premium | $ | to age 65 | | [ ] | |
| [ ] Step rate premium | $ | to age 65 | | [ ] | |

**DISABILITY OVERHEAD EXPENSE POLICY**

[ ] Business [ ] Professional $ ____ ____

Aggregate Benefit
[ ] 12 times monthly maximum
[ ] 24 times monthly maximum

[ ] **KEYPERSON POLICY** (Complete Keyperson Supplement, form 90-1927)

[ ] **BUYOUT POLICY** (Complete Buyout Supplement, form 90-1928)

**10. ADDITIONAL BENEFITS**

(If more than one policy is applied for, indicate to which policy(ies) each benefit should be attached.)

[X] Additional Purchase Benefit (APB) $ 1,000 (Amount on each Purchase Date) ____

[ ] Business Additional Purchase Benefit (BAPB) $ ____ (Amount on each Purchase Date) ____ ____

[ ] Social Security Substitute Benefit (SSS) $ ____ (Monthly Benefit) ____

SSS Beginning Date ____
(Used only for Interim Term policy in cash sickness states)

[ ] Annually Renewable Disability Income Benefit (ARDI) $ ____ (Monthly Benefit) ____

[X] Indexed Income Benefit (IIB) ____

[ ] Annually Indexing Benefit (AIB) ____

**11.** If Northwestern Mutual Life is not able to issue the policy and any additional benefits as applied for, should the Company issue a policy if it can do so only in a smaller amount, or on a different plan, or without an additional benefit? [ ] Yes [ ] No

**12. SPECIAL DATING**

Prepaid: [ ] Short term — Policy Date will coincide with ISA Payment Date.
[ ] Short term to ___/___/___ (Month Day Year) [ ] Date to save age [ ] Backdate to ___/___/___ (Month Day Year)

Non-prepaid: [ ] Specified future date ___/___/___ (Month Day Year) [ ] Date to save age [ ] Backdate to ___/___/___ (Month Day Year)

**13.** (Do not complete for Keyperson or Buyout)
The OWNER of the Disability Insurance policy(ies) will be:

[X] Insured [ ] Applicant [ ] Other ____ (Full Name)

**14. PREMIUM INFORMATION**

A. Has the premium for the policy applied for been paid in exchange for the Conditional Disability Insurance Agreement with the same number as this application? [X] Yes [ ] No

B. Payable: [X] Annually [ ] Semiannually [ ] Quarterly

C. Will the Insured's employer pay the entire premium for this disability insurance?
[ ] Yes [X] No If yes, answer D. and E.

D. Will any part of the premium be included in the Insured's taxable income? [X] Yes [ ] No

E. Will the Insured reimburse the employer for any part of the premium? [ ] Yes [X] No

**15. A. INSURED'S EMPLOYER** is a: [X] Sole Proprietor [ ] Partnership [ ] Corporation
[ ] S Corporation — Date of election ___/___/___ (Month Day Year) [ ] Other, Specify ____

B. Does the Insured have an ownership interest in the business? [X] Yes [ ] No If yes, what is the percent? 100 %



CONFIDENTIAL NM-02582

D172208

INSURED David B McAlpine

Questions 16 to 19 are required because Northwestern Mutual Life's underwriting rules limit the amount of disability insurance on the Insured in this company and elsewhere.

**16A. DISABILITY COVERAGES** List and describe all disability benefits including:

- disability insurance in all companies, including Northwestern Mutual Life;
- group disability insurance in all companies, including Northwestern Mutual Life;
- private and government pension or retirement plans;
- salary continuation plans;
- association plans;
- credit insurance plans;
- overhead expense insurance; and
- any other coverage which provides disability benefits.

Also include any coverage for which the Insured will become eligible within the next five years after a qualifying period of employment has been met.

Identify: **(I)** In-force, **(P)** Pending or **(C)** Contemplated. If none, check: ☒ NONE.

| Insurer | Type Disability Income, Overhead, Buyout, Keyperson, etc. | Benefit Amount | Benefit Period Accident | Benefit Period Sickness | I, P, C, or Date of Eligibility | Check if Offset by Social Security | Check if Non-contributory |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

**B.** Will the insurance applied for replace any Northwestern Mutual Life disability insurance? ☐ Yes ☒ No
If yes, complete the Conditional Surrender form 17-0789, and the agent should submit any required papers.

**C.** Will the insurance applied for replace disability insurance from a source other than Northwestern Mutual Life? ☐ Yes ☒ No
If yes, complete the information below, and the agent should submit any required papers.

*When issuing any insurance as a result of this application, Northwestern Mutual Life will rely on the fact that the coverage listed below can and will be terminated on the stated date (usually the next premium due date).* If the coverage listed below is not terminated on that date, any policy issued and accepted will be rescinded and all premiums will be returned. Northwestern Mutual Life may contact any listed insurer after the stated date to confirm that the coverage has been terminated.

| Insurance Company | Type Disability Income, Overhead, Buyout, Keyperson, etc. | Group or Association Name | Policy Number | Amount to be Replaced | Premium Due Date/ Termination Date |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |



CONFIDENTIAL NM-02583

**17A. EARNED INCOME** For the prior calendar year, state the income and tax deductible business expense figures from the Insured's occupation(s) as reported on the individual and business income tax returns (including supporting schedules and forms). Figures for the current calendar year should be the Insured's best estimates of what will be reported for federal income tax purposes for the current year. Best estimates on this basis may also be used for the prior calendar year only if the Insured has not yet completed a tax return for that year. Entries which do not agree with tax return information should be explained in Remarks. NOTE: Do not list undeclared income. Limit fringe benefits to those which are asked for in 17A. 1 below.

| | Prior Calendar Year Jan. 1-Dec. 31 | Estimate Current Calendar Year Jan. 1-Dec. 31 |
|---|---|---|
| **1. EARNED INCOME from primary occupation:** | | |
| If the Insured is salaried, state the actual salary earned last year and the current salary year. If the salary has recently changed, show the date the change took effect in Remarks. | $ NA | $ NA |
| If the Insured is a commissioned salesperson, state the total commissions. | NA | NA |
| State any bonus(es) that the Insured receives on a regular basis. Do not state if included above. | NA | NA |
| If the Insured is an unincorporated sole proprietor or a partner in an unincorporated partnership, state the Insured's share of gross income less the cost of goods sold. | 439,000 | 600,000 |
| State any pension plan contributions or deferred compensation amounts that would cease if the Insured were disabled. Give details and source of this income in Remarks. | None | None |
| **2. CORPORATE EARNINGS:** If the Insured owns 20% or more of the corporation employing the Insured, state the insured's share of before-tax net corporate earnings. If the corporation had a loss for the year, put parentheses around the figures in each column, i.e. (losses). Give details of any unusual losses in Remarks. | NONE | None |
| **3. EARNED INCOME from other occupations listed in question 7B:** If none, so state. | None | None |
| **4. Total Earned Income:** Add amounts in 17A. 1, 17A. 2 and 17A. 3. | ~~439,000~~ ~~160,000~~ | 600,000 |
| **B. EXPENSES** State the Insured's tax deductible business expenses from all occupations. If none, so state. | 160,000 | 200,000 |
| **C. NET EARNED INCOME** Line A. 3 minus line B. | 279,000 | 400,000 |
| **D. UNEARNED INCOME** State the Insured's net personal unearned income. This includes capital gains, interest, dividends, tax exempt unearned income, income from other investments, net rental income, pensions, annuities, and alimony. If none, so state. | | |

**E. NET WORTH** Is the Insured's net worth, exclusive of primary residence, greater than $4,000,000? (Include the Insured's assets less liabilities such as mortgages, loans and debts.) ☐ Yes ☒ No

If yes, complete section below. State fair market value less any associated indebtedness.

Cash savings, stocks, bonds $________ Real estate (Exclude primary residence) $________

Business equity (Exclude goodwill) $________ Other (Give details in Remarks) $________

Personal property $________

**18.** Has the Insured or any business owned in whole or in part by the Insured ever been in bankruptcy or named as debtor in a credit committee, composition agreement, or receivership action? ☐ Yes ☒ No

If yes, give details in Remarks, including whether a bankruptcy or other action involved a business or was personal. If bankruptcy, also state whether proceedings involved Chapter 7, 11, or 13.

Date Discharged: ___/___/___ (Month Day Year) Where ________ (City) ________ (County) ________ (State)

**REMARKS:**

90-1 D.I. (0388)



CONFIDENTIAL NM-02584

D172208

INSURED David B McAlpine

19. **Complete this question only if applying for a DISABILITY OVERHEAD EXPENSE POLICY.**

A. What is the Insured's share of the overhead expenses? ________%

B. What is the amount of the Insured's share of the typical monthly tax deductible business expenses as reported on IRS forms and supporting schedules? (For principal on business loans, give current monthly installment payments.)

$ ________ Rent

$ ________ Heat

$ ________ Telephone

$ ________ Electricity

$ ________ Professional Dues and License Fees

$ ________ Maintenance

$ ________ Real Estate Taxes

$ ________ Other Taxes (Specify)

________________

________________

$ ________ Interest on Business Loans

$ ________ Depreciation or Principal on Business Loans (Enter the larger of monthly depreciation expense or monthly principal on business loans.)

$ ________ Legal and Professional Fees

$ ________ Insurance Premiums

$ ________ Employees' Salaries (Professional DOE only) Do not include salaries of employees in the same occupation as the Insured.

$ ________ Other Normal Expenses (Itemize)

________________

________________

$ ________ TOTAL

C. How many people are employed by this firm? (Include the Insured in the total.)

Owners: Full-time ________ Part-time ________

Non-Owners: Full-time ________ Part-time ________

D. How many of the employees are in the same occupation as the Insured? (Include the Insured in the total.)

Owners: Full-time ________ Part-time ________

Non-Owners: Full-time ________ Part-time ________

REMARKS:

☐ Check here if applying for Joint Life and Disability Insurance

## UNDERWRITING QUESTIONS TO BE ANSWERED BY INSURED

20. Have you ever had life, disability, or health insurance declined, rated, modified, cancelled, or not renewed?
*(If yes, explain in REMARKS)* ☐ Yes ☒ No

21. When was your last previous examination or application for life, disability, or accidental death insurance?
Month July Year 1989 Company NML

22. (Do not complete for disability insurance)
Indicate below whether any other life insurance on your life is Individual (Ind) or Group (Grp) and identify In-Force (I), Pending (P) or Contemplated (C).
If none, check: ☐ NONE

| Insurer | Ind or Grp | Life Insurance Amount | Accidental Death Amount | I, P, or C |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

23. Marital Status: ☐ Single, Widowed or Divorced ☒ Married

24. Citizen of. ☐ U.S.A. ☒ Other South Africa
If other: Visa Type ________ Visa No. ________

25. Do you contemplate leaving the United States of America for travel or residence?
*(If yes, explain in REMARKS)* ☐ Yes ☒ No

26. (Do not complete for disability insurance)
A. What is your occupation(s)? ________
What are your duties? ________
B. Employer(s) ________
Name
________
Street & No. or R.F.D.
________
City State Zip Code
C. How long so employed? ________
*(If less than 2 years, explain in REMARKS)*

27. Are you a member of, or do you contemplate joining any branch of the Armed Forces or reserve military unit?
*(If yes, complete Military Section 90-5)* ☐ Yes ☒ No

28. Except as a passenger on a regularly scheduled flight, have you flown within the past 2 years, or do you contemplate flying in the future?
*(If yes, complete Aviation Section 90-5)* ☐ Yes ☒ No

29. Have you within the past 2 years participated in or do you contemplate participating in racing (automobile, snowmobile, motorcycle, boat or go-kart) underwater or sky diving, hang gliding, mountain or rock climbing or rodeos?
*(If yes, complete Avocation Section 90-6)* ☐ Yes ☒ No

30 A. What is your Automobile Driver's License Number?
\# 04778047 State TX
or, ☐ I do not have a driver's license.

B. In the past 5 years have you been in a motor vehicle accident, charged with a moving violation of any motor vehicle law, or had your license restricted or revoked?
*(If yes, explain in C., D. and/or REMARKS)* ☐ Yes ☒ No

C. Moving Violations within the past 5 years:

| Date | Type and Details (Speeding, Reckless Driving, Driving While Intoxicated, etc.) | Action (Citation, Fine, etc.) | Accident (Yes or No) |
|---|---|---|---|
| | | | |

D. Details on any accidents: (Include date, citations, damage amounts, injuries.)

**REMARKS: Give details of "Yes" answers. Identify question number.**



CONFIDENTIAL NM-02586

**DECLARATIONS TO MEDICAL EXAMINER**
**THE NORTHWESTERN MUTUAL LIFE**
**MILWAUKEE, WISCONSIN**

CHECK PURPOSE — New Insurace: [X] Life, EP, VA [ ] DI; [ ] Change [ ] Add Benefit [ ] Payor Benefit; [ ] Reconsideration [ ] Reinstatement

**INSURED** David (First) B (Middle Initial) McAlpine (Last) [X] Male [ ] Female

31 A. Have you ever smoked cigarettes? [ ] Yes [X] No
[ ] Current smoker
[ ] Past smoker — Date last smoked a cigarette __/__/__ (Mo Day Yr)
B. Are you using tobacco in any other form? If yes, specify ________ [ ] Yes [X] No

32. Are you using any medication or drugs? [ ] Yes [X] No

33. In the last 10 years, have you been treated for or had any indication of:
A. Disorder of eyes, ears, mouth, nose or throat? [ ] Yes [X] No
B. Fainting spells, seizures or convulsions, recurrent headaches, paralysis or stroke, mental, nervous or psychiatric disorder? [ ] Yes [X] No
C. Persistent shortness of breath, cough, blood spitting; bronchitis, asthma, emphysema, tuberculosis or other lung or respiratory disorder? [ ] Yes [X] No
D. Chest pain, discomfort or tightness, palpitation, high blood pressure, heart murmur, heart attack or other disorder of the heart or blood vessels? [ ] Yes [X] No
E. Jaundice, intestinal bleeding; ulcer, hernia, colitis, diverticulitis, recurrent indigestion or other disorder of the stomach, intestines, liver, gall bladder or pancreas? [ ] Yes [X] No
F. Sugar, albumin, blood in urine; venereal disease; stone or other disorder of kidney, bladder, prostate, or reproductive organs? [ ] Yes [X] No
G. Diabetes; thyroid or other endocrine disorders? [ ] Yes [X] No
H. Rheumatism, arthritis, gout, or disorder of the muscles or bones, spine, back or joints? [ ] Yes [X] No
I. Deformity, lameness or amputation? [ ] Yes [X] No
J. Disorder of the skin or lymph glands, unexplained fevers, tumor or cancer? [ ] Yes [X] No
K. Allergies: anemia or other disorder of the blood? [ ] Yes [X] No

34 A. In the last 10 years, have you sought or received advice or treatment for use of alcohol or drugs? [ ] Yes [X] No
B. In the last 10 years have you used cocaine, heroin or any other narcotic drug except as legally prescribed by a physician or medical practitioner? [ ] Yes [X] No
C. In the last 10 years, have you used legally prescribed drugs in excess of dosages prescribed by a physician? [ ] Yes [X] No

35. Are you pregnant? [ ] Yes [X] No

36. Other than above, have you within the past 5 years:
A. Had any physician or practitioner examine, advise or treat you? [ ] Yes [X] No
B. Been a patient in a hospital, clinic or medical facility? [ ] Yes [X] No
C. Had EKG, X-ray, other test? [ ] Yes [X] No
D. Been advised to have any test, hospitalization, or surgery which was not completed? [ ] Yes [X] No

37. Have you ever requested or received a pension, benefits or payment because of an injury, sickness or disability? [ ] Yes [X] No

38 A. Do you have a family history of diabetes, cancer, melanoma, heart or kidney disease, mental illness or suicide? [X] Yes [ ] No

B. Family History

| | Age if Living | Family History or Cause of Death | Age at Death |
|---|---|---|---|
| Father | 75 | MI age 49 | |
| Mother | 73 | | |
| Brothers and Sisters | | died age 43 of MI | 43 |

39 A. Height 6 ft. 1 in. B. Weight 175 lbs.
C. Have you lost weight in the past 6 months? [ ] Yes [X] No
If yes, loss was ______ lbs.

40. If the Insured is under age 1, what was the weight at birth? ____ lbs. ____ ozs.

41. Have you ever had a medical diagnosis of or have you received medical advice or treatment for Acquired Immune Deficiency Syndrome (AIDS) or Aids Related Complex (ARC) or any disorder of the immune system? [ ] Yes [X] No

42. Do you have a personal physician? [ ] Yes [X] No
Name ______
Address ______
City State Zip
Date last seen __/__/__ (Mo Day Yr) Reason ______
Phone number ( )

43. **Remarks. Give details of "Yes" answers. Identify question number. State signs, symptoms and diagnosis of illness and name and full address of each physician consulted and the dates consulted:**

**REMARKS:**

I declare that my answers and statements are correctly recorded, complete and true to the best of my knowledge and belief. Statements in this application are representations and not warranties.

Signed in my presence [signature] Medical Examiner    [signature] Signature of Insured (or informant)

Date 06 / 27 / 1989 (Month Day Year)

## REMARKS CONT'D

| Question Number | Dates | Details or Conditions Including Treatment and Result | Physician or Practitioner's Name, Address City, State, Zip Code |
|---|---|---|---|
| | | | |

**The Insured consents to this application and declares that the answers and statements made on this application are correctly recorded, complete and true to the best of the Insured's knowledge and belief. Statements in this application are representations and not warranties.**

It is agreed that:

(1) If the premium is not paid when the application is signed, no insurance will be in effect. The insurance will take effect at the time the policy is delivered and the premium is paid if the answers and statements in the application are still true to the best of the Insured's knowledge and belief.

(2) If the premium is paid when the application is taken, no disability insurance will have been in effect if Section I. of the Conditional Disability Insurance Agreement applies.

(3) For each separate period of disability, no benefits will be payable until the Beginning Date in question 9.

(4) Receipt of an outline of coverage for the policy applied for is acknowledged.

(5) No agent is authorized to make or alter contracts or to waive any of the Company's rights or requirements.

## INSURED'S AUTHORIZATION TO OBTAIN AND DISCLOSE INFORMATION

I authorize Northwestern Mutual Life, its agents, employees, reinsurers, insurance support organizations and their representatives to obtain information about me to evaluate this application. This information may be about: (a) age; (b) medical history, condition and care; (c) physical and mental health; (d) occupation; (e) income; (f) avocations; (g) driving record; (h) other personal characteristics; and (i) other insurance. It includes the use of alcohol, drugs and tobacco.

I authorize any physician, medical professional, hospital, clinic, medical facility, the Veterans Administration, the MIB, Inc., employer, consumer reporting agency or other insurance company, to release information about me to Northwestern Mutual Life or its representatives on receipt of this Authorization. Northwestern Mutual Life or its representative may also release this information about me to its reinsurer, to the MIB, Inc., or to another insurance company to whom I have applied or to whom a claim has been made. No other release may be made except as allowed by law or as I further authorize.

I have received a copy of the Medical Information Bureau and Fair Credit Reporting Act notices. I authorize Northwestern Mutual Life to obtain an investigative consumer report on me.

☐ I request to be interviewed if an investigative consumer report is done.

This form is valid for 30 months from the date it is signed. A copy of this form is as valid as the original and will be provided on request.

_______________ Signature of Insured (if other than Applicant)

(x) [signature] Signature of Applicant

Signed at Fort Worth (City) Tarrant (County) TX (State) Date 11 / 10 / 89 (Month Day Year)

[signature] Signature of Licensed Agent

# THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY

720 East Wisconsin Avenue
Milwaukee, WI 53202

Copy sent with Policy

## TEXAS NOTICE AND CONSENT FOR AIDS-RELATED BLOOD TEST

To evaluate your insurability, the Insurer named above (the Insurer) has requested that you provide a sample of your blood for testing and analysis to determine the presence of human immunodeficiency virus (HIV) antibodies. By signing and dating this form you agree that this test may be done and that underwriting decisions will be based on the test result. A series of three tests will be performed by a licensed laboratory through a medically accepted procedure.

### PRE-TESTING CONSIDERATION

Many public health organizations have recommended that before taking an AIDS-related blood test a person seek counseling to become informed concerning the implications of such a test. You may wish to consider counseling, at your expense, prior to being tested.

### MEANING OF POSITIVE TEST RESULT

The test is not a test for AIDS. It is a test for antibodies to the HIV virus, the causative agent for AIDS, and shows whether you have been exposed to the virus. A positive test result does not mean that you have AIDS but that you are at significantly increased risk of developing problems with your immune system. The test for HIV antibodies is very sensitive. Errors are rare, but they do occur. Your private physician, a public health clinic, or an AIDS information organization in your city might provide you with further information on the medical implications of a positive test. Positive HIV antibody test results will adversely affect your application for insurance. This means that your application will be declined.

### CONFIDENTIALITY OF TEST RESULTS

All test results are required to be treated confidentially. They will be reported by the laboratory to the Insurer. The test results may be disclosed as required by law or may be disclosed to employees of the Insurer who have the responsibility to make underwriting decisions on behalf of the Insurer or to outside legal counsel who needs such information to effectively represent the Insurer in regard to your application. The results may be disclosed to a reinsurer, if the reinsurer is involved in the underwriting process. The test may be released to an insurance medical information exchange under procedures that are designed to assure confidentiality, including the use of general codes that also cover results of tests for other diseases or conditions not related to AIDS, or for the preparation of statistical reports that do not disclose the identity of any particular person.

### NOTIFICATION OF TEST RESULT

If your test results are negative, no routine notification will be sent to you. If your test results are reported by the laboratory to the Insurer as being positive, you are entitled to that information if you so desire. Because a trained person should deliver that information so that you can understand clearly what the test result means, you are asked to list your private physician so that the Insurer can have him or her tell you the test result and explain its meaning. Name of physician for reporting a possible positive test result:

Name: ______________________

Address: ______________________

City, State, Zip: ______________________

If you do not wish to know the results of the test, initial here:________. In the event the test is positive and you are denied coverage because of that fact and you request the reason for the denial, the Insurer may require you to name a physician at that time in order to receive the information.

If you want to know the results of the test but do not at present have a private physician, initial here: DBM. The result will be sent to you at the address provided by registered mail with delivery restricted to only you. If you desire the results to be mailed to some person other than yourself who is not a physician, print that person's name and address here:

Name: ______________________

Address: ______________________

City, State, Zip: ______________________

The result will be sent to that person by registered mail with restricted delivery.

### CONSENT

I have read and I understand this Notice and Consent for AIDS-Related Blood Testing. I voluntarily consent to the withdrawal of blood from me, the testing of that blood, and the disclosure of the test results as described above. I have read the information on this form about what test result means and understand that I should contact a local AIDS service group or my private physician for further information and counseling if the test result is positive.

I understand that I have the right to request and receive a copy of this authorization. A photocopy of this form will be as valid as the original.

DBMcAlpine [signature]
Signature of Proposed Insured or Parent/Guardian

David B. McAlpine
Name of Proposed Insured

5/15/50
Date of Birth

6/27/89
Date Signed

4801 Countryside Ct. E
Fort Worth, TX 76132
Address

17-0876 (2-88)

Copy sent with Policy

Northwestern Mutual Life

December 5, 1989

To whom it may concern:

I, David B. McAlpine, M.D., confirm that I have no intention of returning to my country of origin for more than one month in any year, and if disabled while outside the country, I would return to the USA.

Sincerely,

D. B. McAlpine 12/7/89

David B. McAlpine



CONFIDENTIAL NM-02590

# PERSONAL HEALTH AND STATUS DECLARATION

## CONDITIONS FOR DELIVERY OF POLICY

Copy sent with Policy

Prior to delivery the agent should insert in each policy a completed copy of this form with this section detached and on another identical copy complete the statement below attesting to the fact that such insertion has been made.

1. If no exceptions are entered in the space provided, delivery of the policy may be made, and the completed copy of this form, so attested, is to be sent to the New Business Department at the Home Office.
2. **If any exception whatsoever is noted, the policy is not to be delivered until the attested copy of this form has been submitted to the Home Office and delivery of the policy authorized.**

I attest that a true copy of this declaration has been attached to the policy.

Signature of Agent [signature]

---

90-0600 (Revised 3-81)

# PERSONAL HEALTH AND STATUS DECLARATION

## SUPPLEMENT TO APPLICATION

## THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY

MILWAUKEE, WISCONSIN

For Home Office Use

Policy No. ____

Date this form signed 11/10/89

Insured David B. McAlpine

Place Fort Worth Texas

This form is offered for the following purpose (check appropriate box):

- ☐ **To effect delivery of the above policy.** *See "Conditions for Delivery of Policy" below.*
- ☐ **To effect a change of the above policy.** *Complete one copy and submit with request and policy.*
- ☐ **To complete an application pending at the Home Office.** *Enter Policy No.* ____
- ☒ **To obtain an additional policy** ____ Number to be Inserted at Home Office *Complete one copy and submit with application 90-1 & 2, & 90-8A.*
- ☐ **To add the** ____ **Benefit to the above policy.** *Complete one copy and submit with request and policy.*
- ☐ **Other** ____

This form supplements the statements and answers contained (a) in the application for the policy identified above or (b) in any application or 90-3 and 4 (or 90-4A & B, 90-4C & D) [DECLARATIONS AND MEDICAL EXAMINATION] completed by me within the last 90 days and submitted to the Company.

I DECLARE that I am in good health and that since making such statements and furnishing such answers:

1. I have had no illnesses, diseases, accidents or operations;
2. I have not been to or in a clinic, hospital, or sanatorium for observation, operation or treatment;
3. I have not been examined, advised or treated by any physician, practitioner or healer (this includes my usual medical attendant);
4. I have not left nor do I contemplate leaving the United States of America for travel or residence;
5. I have had no change in status as to occupation;
6. I have not made, nor do I contemplate making, any aerial flights other than as a fare-paying passenger of a scheduled airline;
7. I have not become a member of, nor do I contemplate joining, any branch of the Armed Forces, the R.O.T.C., the National Guard, or any other component of the Armed Forces Reserve, either on an active or inactive status;
8. I have not participated in, nor do I contemplate participating in, racing (automobile, motorcycle, snowmobile, boat or go-kart), scuba or skin diving, mountain climbing, rodeos, hang gliding, or any other hazardous avocation;
9. I have not been in a motor vehicle accident, charged with a moving violation of any motor vehicle law or had my license restricted or revoked;
10. I have not made application for a pension or an application to any other Company, Association or Society for life or accidental death insurance, disability benefits, or reinstatement of a lapsed policy, nor has any application on my life for life or disability income been declined, postponed or modified or restricted as to kind, amount, or premium.

I DECLARE that there are no exceptions to the above except as stated here:

**Explain any exception in full** and if it relates to (2) or (3) above, list all names and addresses and related dates covering each occasion.

If none, check here ☐

I received a complete physical checkup in August 1989 by Dr. Billy Pugh 1521 Cooper (817) 336-4433 Fort Worth TX 76104

"I declare that the answers and statements contained in this supplement are correctly recorded, complete, and true to the best of my knowledge and belief. Statements in this application are representations and not warranties.

Date 11/10/89 19____ ⊗ WBMcAlp [signature] Signature of Insured or Informant

[signature] Signature of Agent

PERSONAL HEALTH AND STATUS DECLARATION

90-0600 (3-81)

**It is recommended that you ...**

read your policy.

notify your Northwestern Mutual agent or the Company at 720 E. Wisconsin Avenue, Milwaukee, Wis. 53202, of an address change.

call your Northwestern Mutual agent for information -- particularly on a suggestion to terminate or exchange this policy for another policy or plan.

**Election Of Trustees**

The members of The Northwestern Mutual Life Insurance Company are its policyholders of insurance policies and deferred annuity contracts. The members exercise control through a Board of Trustees. Elections to the Board are held each year at the annual meeting of members. Members are entitled to vote in person or by proxy.

**COMPLAINT NOTICE**

Should any dispute arise about your premiums or claim that you have filed, contact the agent who sold you this policy or write to the Company. If the problem is not resolved as provided in the policy, you may also write the State Board of Insurance, P.O. Box 149091, Austin, Texas 78714-9091, FAX (512) 475-1771. This notice of complaint procedure is for information only and does not become a part or condition of this policy.

**DISABILITY INCOME POLICY**

REPLICA

**Eligible For Annual Dividends.**

Non-Cancellable and
Guaranteed Renewable to Age 65

Conditionally Renewable to Age 75

MMD.1.TX

Countersigned by ______________________
Licensed Resident Agent

Exhibit “2”

JON K. MAGALSKA, F.S.A., M.A.A.A.
Associate Actuary

Northwestern Mutual Life

February 1, 1990

Dr. David B. McAlpine
4801 Countryside Ct. East
Fort Worth, TX 76132

Dear Dr. McAlpine:

Re: Policy D712825

This letter is in response to your request for an interpretation of the definition of disability contained in NML's disability income policies.

Under the terms of these policies, "Total Disability" is defined in terms of your ability to perform your occupation. During the Initial Period, you would be considered totally disabled if you cannot perform the principal duties of the occupation in which you are engaged at the time you become disabled. After the Initial Period, you would be considered totally disabled if you were unable to perform the principal duties of your occupation and were not gainfully employed in any other occupation.

If you are engaged exclusively in a professional specialty, NML will consider that specialty to be your occupation. By "professional specialty" we mean such occupations as obstetrics, gynecology, and trial law. We do not mean employment by a particular employer. In other words, it is your specific work which is covered, not your position or title.

We recognize that your duties are subject to change from time to time, and, as stated in the contract, the words "his occupation" mean the occupation of the insured at the time he becomes disabled. If the insured is regularly engaged in more than one occupation, all of the occupations of the insured at the time he becomes disabled will be combined together to be "his occupation."

Please be assured that when we make claim decisions, we look at the specific occupational duties of each insured. In all respects our goal is to administer claims fairly and to recognize that each insured's situation calls for special consideration.

I hope this clarifies the meaning of the contracts. If I can be of further assistance, please feel free to contact me.

Sincerely,

Jon Magalska

Jon Magalska, F.S.A., M.A.A.A.
Associate Actuary

JM/do

cc: A. J. Hillin



CONFIDENTIAL NM-02530

# Exhibit “B”

AFFIDAVIT

Dr. Dan A. Axthelm, M.D. appeared before me today and stated under oath:

"My name is Dr. Dan A. Axthelm, M.D. I am over the age of twenty-one and I am fully competent to make this affidavit. The facts stated in this affidavit are within my personal knowledge and are true and correct.

"Dr. David McAlpine, M.D. has been a patient of mine for many years now. He has chronic Osteoarthritis that affects among other joints, the fingers of both of his hands. This is a chronic, progressive, degenerative arthritic condition that has no known cure, hence he is not going to ever be free of this condition. Treatment is available to help day to day symptoms, but will never allow him to "recover", or be "cured" of this condition."

Signed on this 27 day of July, 2017.

DR. DAN A. AXTHELM, M.D.

Signed before me on this 27th day of July, 2017.

Rosie Cortez
Notary Public, State of Texas
Commission # 4616856
Expires: 08/25/2018

Notary Public, State of Texas